## THE OVERSEERS OF THE POOR OF THE TOWN OF MILAN *vs.* THE SUPERVISORS OF DUTCHESS.

Where an *appeal* from an *order of removal* of a pauper was entered in a court of *general sessions* previous to the repeal of the "act for the relief and settlement of the poor," *it was held,* that the appeal might be prosecuted and completed under the repealed statute, by virtue of the *saving clause* in the general repealing act.

That an *attachment* may be issued under that act against the overseers of the poor of a town, for the costs and expenses of an appeal, and that a discharge by the sessions of overseers arrested on such process, will be presumed to have been ordered, on the ground that the overseers had not monies in their hands belonging to the town not specially appropriated to other objects.

That the repeal of the act did not deprive the *sessions* of jurisdiction of causes depending before them, the power of the *superintendants of the poor* to decide such disputes being *prospective.*

And that the *award* or *determination* of the sessions as to the payment of the costs and expenses, is *within the meaning of the act* "a judgment rendered" authorizing the supervisors to cause the amount thereof to be levied.

Overseers, &c.
of Milan
v.
Supervisors of
Dutchess.

And *it seems* that adjudications of superintendents of the poor, and of justices of the peace, which are to be enforced in like manner, would also for this purpose be considered *judgments*.

MANDAMUS. An alternative *mandamus* was issued in this case, directing the supervisors of the county of Dutchess to add to the tax to be laid upon the town of *Redhook*, and to cause the same to be levied, the sum of $323,79, awarded by the general sessions of that county, to be paid by the overseers of the poor of *Redhook* to the overseers of the poor of *Milan*, as the costs and expenses of an *appeal* prosecuted by Milan against Redhook, in reference to an order of removal of a pauper, or that they shew cause, &c. The supervisors made a return to the alternative writ, in which they state, that in June, 1826, Milan entered an appeal against an order of removal of the pauper from Redhook to Milan, which order was *confirmed* by the sessions in February, 1827; the proceedings were removed by *certiorari* into this court, where the judgment of the sessions was *reversed* in May, 1830 ; and in October, 1830, there was a rehearing in the sessions, and the order of removal *quashed* with costs. In September, 1831, the sessions made an order confirming a taxation of costs and expenses relative to the order of removal, and directing the sum of $323,79 to be paid by the overseers of Redhook. An attachment was issued against the overseers of Redhook, on which they were brought into the court of general sessions in June, 1832, and the attachment was dismissed *for want of jurisdiction*. That thereupon at the *annual meeting* of the board of supervisors of Dutchess, held in November, 1832, the order of the sessions of September, 1831, directing the payment of the sum of money awarded to Milan, certified by the clerk of the county under the seal of the common pleas, was presented to the board, by the overseers of the poor of Milan, and the board asked to cause the same to be assessed and levied. The return further states, that on the 12th January, 1830, five *superintendents of the poor of the county* were duly appointed, and took upon themselves the discharge of the duties of the office ; and that the supervisors of the county *rejected* the application of the overseers of Milan for the following reasons: 1. That the award of costs and expenses by the general sessions cannot be

recognized as a *judgment* for any *debt*, damages or costs ;
2. That the sessions had no jurisdiction of the matter after
31st December, 1829; 3. That if the sessions had jurisdiction
by reason of the *saving clause* in the *general repealing act*, the
order of the court could be enforced only under the provisions
of the *act for the relief and settlement of the poor*, and the acts
amending the same ; 4. That the board of supervisors cannot
recognize any claim upon towns, or lay a tax to enforce such
claims, except in the cases provided for by the revised statutes;
5. That *no certified copy of the docket of a judgment or the re-
cord thereof*, was produced before them ; nor could such re-
cord be made in the sessions, such court not having authority
to render judgments for any debt, damages or costs ; and 6.
That the sessions *virtually annulled* their previous orders by
*dismissing the attachment for want of jurisdiction.* To which
return the relators *demurred*, and the supervisors joined in the
demurrer. The cause was submitted on written arguments by

*J. Armstrong, jun.* for the relators.

*D. V. N. Radcliff & Ulysses Cole*, for the supervisors.

*By the Court*, SAVAGE, Ch. J. The provisions of the revis-
ed statutes in reference to the duties of supervisors, on applica-
tions to them, to cause monies to be levied, awarded against
overseers of the poor, &c. are as follows : " If judgment be
rendered for any debt, damages or costs, against the board of
supervisors of a county, against the county superintendents of
the poor of any county, against any town, or the supervisor
thereof, or the overseers thereof, on account of the liability of
such county or town, and such judgment be not suspended by
writ of error or otherwise, or be not paid and satisfied before
the next annual meeting of the board of supervisiors of the
county, a *certified copy of the docket of such judgment, or the
record thereof*, if required by such board, shall be laid before
the board of supervisors of the county, at some annual meet-
ing thereof ;" and, " the board of supervisors shall add the
amount of such judgment together, with interest thereon from
the time of recovery to the first Monday in February then

*The margin note reads:*

UTICA,
July, 1835.

Overseers, &c.
of Milan
v.
Supervisors of
Dutchess.

UTICA,
July, 1835.

Overseers, &c.
of Milan
v.
Supervisors of
Dutchess.

next, and also the expenses of the certified copy of the dock-et, or record of judgment mentioned in the preceding sec-tion, to the tax to be laid upon the county or town against which or against the officers of which such recovery shall have been had ; which sums shall be assessed, levied and collected, as other contingent charges of such town or coun-ty, and shall be paid by the county treasurer to the person recovering such judgment." 2 *R. S.* 474, § 102, 103.

The board of supervisors refused the application, for rea-sons which are *set forth* in their return to the alternative mandamus.

It cannot be denied that the court of general sessions of Dutchess county had jurisdiction of the appeal in 1826, when it was brought ; nor is it asserted that that jurisdic-tion has been taken away, except by the operation of the revised statutes. The revised laws of 1813 expressly gave the right to appeal, and authorized and required the court to hear and determine such appeals, and do justice therein, and to award costs to the prevailing party. That award and determination, according to that statute and the prac-tice of the courts, should have been enforced by *attachment.* An attachment, it seems, has been issued, and the officers attached were discharged, on the ground of want of juris-diction. The court undoubtedly had power to issue the at-tachment, and to compel obedience to their order and de-termination ; but if it appeared, as probably it did, that the overseers of the poor who were attached had no monies in their hands belonging to the town, then the court did right in discharging the attachment ; not for want of jurisdiction, but because the officers attached were not personally liable. The revised statutes, 2 *R. S.* 475, § 105, make it the duty of such officers to pay, when they have funds in their hands not specially appropriated. It follows, that if they have no such funds, they are not personally liable. The discharge from the attachment was therefore proper, and probably the reason I have assigned is the same which the court be-low denominated a want of jurisdiction. Whether that be so or not, I cannot doubt the power of the court to enforce payment by attachment, provided it had appeared to them

that the officers had money in their hands belonging to the town, and not specially appropriated to any other object.

There is no difficulty growing out of the repeal of the "act for the relief and settlement of the poor." It has heretofore been held that when a statute is repealed under which a suit has been commenced, and no provision is made for the prosecution of such suit, such suit is to be conducted under the repealed statute, by virtue of the 5th section of the repealing act, 2 *R. S.* 779; 4 *Wendell*, 211; but when the revised statutes have modified the proceedings in such suits, then such modification shall be adopted. In the case now before us, there has been an entire repeal of the act which conferred jurisdiction upon the courts of general sessions, in cases upon appeals from orders removing paupers; and all such questions are, by the revised statutes, transferred to a different tribunal. It is only by virtue of the fifth section of the repealing act, that the general sessions has power to complete suits pending at the time of the repeal.

If the sessions lost jurisdiction, then it is clear that the suit abated, and no other forum was substituted to determine the matter. By that part of the revised statutes which treats of the relief and support of indigent persons, 1 *R. S.* 616, 17, 18, superintendents of the poor are to be annually appointed, who, among other powers conferred on them, are " to decide any dispute that *shall arise* concerning the settlement of any poor person, summarily, upon a hearing of the parties." This is clearly prospective, and refers to future cases—cases to arise subsequent to the 1st January, 1830; not to such as were then pending in the proper court, according to existing laws.

The only remaining question in the case is, whether the award and determination of the court of general sessions is within the meaning of the revised statutes a "judgment rendered for any debt, damages or costs" against the overseers of the poor of the town of Redhook, on account of the liability of such town. It is not denied that the liability, if any, is the liability of the town, and not of the individuals holding the offices of overseers of the poor. Was, then, the decision of the general sessions *a judgment?* It is not indeed technically a judgment which is to be docketed, or of which a record is to

be made; but it is a judicial determination, conclusive between the parties, so long as it remains unreversed by a superior court. In my opinion, therefore, it ought to be considered a judgment within the meaning of the section above referred to; and the entry of such decision should, for this purpose, be considered the docket of such judgment; and a certified copy of such entry competent and sufficient evidence of such judgment. This section of the statute should receive a liberal construction, for the promotion of the objects of the legislature. If it should be construed to mean judgments and records technically, and no other, the adjudications of the superintendents of the poor, of justices of the peace, and all tribunals not technically courts of record, might never be enforced.

I am of opinion that the plaintiffs are entitled to judgment upon the demurrer, and that a peremptory mandamus issue.